Argued June 20, affirmed September 6, reconsideration denied October 24, 1978, Sup Ct review denied January 30, 1979, 285 Or 73

STATE OF OREGON, *Respondent,*

*v.*

DIANE MARIE TRIPP, *Appellant.*

(No. 9658, CA 10142)

583 P2d 591

Ross M. Shepard, Public Defender Services, Eugene, argued the cause for appellant. With him on the brief was Michael D. Linick, Public Defender Services, Eugene.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, C. J., and Johnson,* Gillette and Roberts, Judges.

GILLETTE, J.

---

*Johnson, J., did not participate in this decision.

## GILLETTE, J.

In this case defendant is a 15-year-old girl who has been cited for contempt, ORS 33.010(1),[1] for her refusal to testify before the Lane County Grand Jury in connection with its investigation of a possible case of sexual abuse in the second degree. Defendant was subpoenaed by the grand jury to testify concerning an incident in which she was the crucial witness and alleged victim.[2] She repeatedly refused to testify, even after having been ordered to do so by the circuit court. The circuit court judge found her in contempt of court and ordered that she be detained in the county juvenile facility until such time as she agreed to testify. It is from the contempt order that defendant appeals.

■■  Defendant's first argument is a jurisdictional one: she asserts that the Lane County Circuit Court, as an "adult court," lacks jurisdiction to cite her, a juvenile, for contempt of court. Her claim rests on those provisions in the Oregon Juvenile Code, particularly ORS 419.476(1) and 419.478, which vest exclusive jurisdiction in the juvenile court of persons under 18 years of age.[3] We do not think, however, that the "exclusive

---

[1] ORS 33.010(1)(e) provides:

"The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"\* \* \* \* \*.

"Disobedience of any lawful judgment, decree, order or process of the court, except as provided in ORS 23.020.

[2] Defendant was given a broad grant of immunity with regard to her testimony. A guardian ad litem was appointed her by the circuit court, and she was represented by an attorney throughout the proceedings. Defendant does not claim that all appropriate procedural safeguards were not accorded her.

[3] ORS 419.478 provides:

"If during the pendency of a proceeding in any court other than a juvenile court it is ascertained that the age of the person who is the subject of the proceeding is such that the matter is within the exclusive jurisdiction of the juvenile court, it is the duty of the court in which the proceeding is pending forthwith to transfer the proceeding, together with all the papers, documents and testimony connected therewith, to the juvenile court of the county in which the proceeding is pending."

[ 143 ]

jurisdiction" provision in the Oregon Juvenile Code can be construed to vest jurisdiction in the juvenile court of contempt proceedings arising out of a juvenile's refusal to testify before the grand jury. What little case law we have found appears unanimous in holding that the court in which the contempt occurs possesses full power to deal with a contemptuous juvenile in the same manner as it would any adult person who had committed a similar offense. *See In re Williams,* 306 Fed Supp 617 (DDC 1969); *Thomas v. State,* 21 MD 573, 320 A2d 538 (1974); *Bryant v. State,* 256 Ind 587, 271 NE2d 127, 129-30 (1971); *Application of Balucan,* 44 Haw 271, 353 P2d 631, 636-37 (1960); *Young v. Knight,* 329 SW2d 195, 198-200 (Ky 1959).

Contempt proceedings are sui generis. The ability of a court to preserve its own jurisdiction and orders transcends other concerns, such as the juvenile/adult distinction. Absent a specific statutory directive to the contrary, we hold that the court properly refused to transfer consideration of defendant's contempt to a juvenile court. We hold that the Oregon Juvenile Code provision granting exclusive jurisdiction of juveniles to the juvenile court is inapplicable to cases of contempt committed in another court under circumstances like those found in this case.

Defendant next claims that she should have been afforded the right to a jury trial, citing Art I, §§ 11, 16 and 17.[4] While there is no holding directly in point, the Oregon Supreme Court indicated as long ago as *State ex rel v. Seiber,* 49 Or 1, 11, 88 P 313 (1907) by way of

[4] Oregon Constitution, Art I, § 11 provides in pertinent part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *"

Art I, § 16 provides in pertinent part:

"In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the court as to the law * * *."

Art I, § 17 states:

"In all civil cases the right of trial by jury shall remain inviolate."

dictum that there was no right to jury trial in contempt proceedings. *See also Rust v. Pratt,* 157 Or 505, 512, 72 P2d 533 (1937). *Cf. State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 489, 405 P2d 510, 407 P2d 250 (1965). In view of the fact that contempt proceedings are designed to force compliance with a valid court order, rather than to punish an individual, this rule seems appropriate and we here explicitly adopt it.[5]

■■  In her third assignment of error, defendant relies upon several provisions of the juvenile code to support her contention that an "adult court" has no authority to order that she be confined in a juvenile facility.[6]

---

[5] Defendant also points to the decision of the Oregon Supreme Court in *Brown v. Multnomah County District Court,* 280 Or 95, 570 P2d 52 (1977) and argues that because a charge of contempt may result in imprisonment, the proceeding is more in the nature of a criminal prosecution entitling defendant to a jury trial. Defendant misconstrues *Brown:* Whatever else it may stand for, *Brown* does not purport to hold that a jury trial is required in every proceeding which may result in incarceration.

[6] Defendant cites ORS 419.472(4); 419.575(2); 419.577(3), (5) and (6); and, 419.472(3):

ORS 419.472(4) defines "detention" or "detention facility" as "a facility suitable for the safekeeping of a child who is taken into temporary custody pending investigation and disposition when the circumstances are such that he must be kept in secure custody."

ORS 419.577(3) provides in pertinent part: "* * * No child shall be held in detention more than 24 hours, excluding Saturdays, Sundays and judicial holidays, except on order of the court nor for more than 48 hours, excluding Saturdays, Sundays and judicial holidays, except on order of the court made pursuant to a hearing on the matter of detention. No child shall be held or placed in detention on order of the court, except pursuant to subsection (5), (6) or (7) of this section."

ORS 419.577(5) provides: "Prior to an adjudication of the merits, the court may order that the child be held or placed in detention only when a petition has been filed alleging that the child is within the jurisdiction of the court by reason of paragraph (a) or (f) of subsection (1) of ORS 419.476 or when the court makes a written finding that the behavior of the child immediately endangers the physical welfare of the child or of another. No child shall be detained as a runaway or because the behavior of the child immediately endangers the physical welfare of the child or another under this subsection for more than 72 hours."

ORS 419.577(6)(a) provides: "Subsequent to an adjudication of the merits, the court may order that the child be held or placed in detention pending placement only if the child has been found to be within the

The statutes cited by defendant *provide for* detention in juvenile facilities in instances where the juvenile's confinement is either preliminary to juvenile court proceedings or a result of such proceedings. We do not see how these statutory provisions can be used as authority to prevent a juvenile's detention in juvenile facilities in this case. It is more reasonable to assume that these provisions indicate a legislative directive that when detention is ordered, juveniles not be incarcerated in adult facilities, but rather be detained in juvenile facilities. We think the judge's order that defendant be retained in the county juvenile facility was appropriate.

Finally, defendant argues that the record fails to support the trial court's finding that her refusal to testify before the grand jury "defeated and prejudiced a right and remedy of the state" and is therefore punishable as contempt under ORS 33.020(1).[7] Specifically, defendant alleges that the trial court

"* * * made a written finding that '(4) Diane Marie Tripp's refusal to testify defeated and prejudiced a right and remedy of the State of Oregon,' but made no finding as to how it did so or to what extent."

Defendant relies upon *State ex rel Spencer v. Howe,* 281 Or 599, 606, 576 P2d 4 (1978), where the Supreme Court stated,

"* * * We do not hold that the refusal to answer must be shown to have affected the outcome of the case. But the statute requires the court to find an actual prejudicial effect, specifically focused on the concrete situation in the particular proceeding, before the court imposes

---

jurisdiction of the court by reason of a ground set forth in paragraph (a) of subsection (1) of ORS 419.476."

ORS 419.472(3) defines "Court" as a juvenile court.

[7] ORS 33.020(1) provides that:

"[I]t must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100."

contempt punishment * * *, and to do so by explicit findings before it decides to impose any summary punishment."

■ The trial court made no specific finding other than that previously cited. *Howe* arguably requires more. We think *Howe* is distinguishable, however, because in *Howe* there was no record establishing facts from which the trial court could have made a finding that the witness' action prejudiced a party. Here, by contrast, the trial judge held a hearing on the contempt charge where he heard testimony from a deputy district attorney as to what the grand jury needed from the witness, and was told essentially that the witness was pivotal to establishing whether a serious crime had been committed. We think a trial judge, so informed, would be entitled to find in such circumstances that a witness' refusal to testify "prejudiced a right and remedy of the State of Oregon."

Affirmed.