**Danny Joe GIBSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–917.**

Court of Appeals of Alaska.

May 23, 1986.

Donald L. Surgeon, Asst. Public Defender, Bethel, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Danny Joe Gibson was convicted by a jury of fourth- and fifth-degree misconduct involving a controlled substance (MICS). AS 11.71.040(a)(2); AS 11.71.050(a)(1). Fourth-degree MICS is a class C felony and fifth-degree MICS is a class A misdemeanor. Gibson was sentenced to four years with two years suspended on the felony count and one year with six months suspended on the misdemeanor count, to be served consecutively. He now appeals both the conviction and the sentence on the following grounds: (1) that the indictment was invalid because hearsay testimony was improperly presented to the grand jury; (2) that the state failed to weigh the seized marijuana exclusive of stalks and seeds; and (3) that his sentence is excessive. We affirm Gibson's conviction, but remand for resentencing.

## GRAND JURY INDICTMENT

On July 14, 1984, Danny Gibson sold 26.12 grams of marijuana to a police undercover agent in Bethel. Five days later, on July 19, he sold the same agent an additional amount of marijuana weighing 44.89 grams. The first sale involved slightly less than an ounce of marijuana, while the second sale involved well over one ounce. Gibson was indicted by a grand jury on two counts of MICS.

At the grand jury proceeding, the state's evidence as to the weight and identity of the substances seized from Gibson was presented in the form of laboratory reports prepared by the Alaska State Troopers Scientific Crime Detection Laboratory. Gibson argues that the reports were inadmissible hearsay, so that the resulting indictment was invalid and should have been dismissed.

Alaska Rule of Criminal Procedure 6(r) states that "[h]earsay evidence shall not be presented to the grand jury absent compelling justification for its introduction." Both this court and the Alaska Supreme Court have addressed the issue of whether a written laboratory chemical analysis falls within the prohibition in Criminal Rule 6(r).

In *McKinnon v. State*, 526 P.2d 18 (Alaska 1974), the supreme court found that reports from laboratory tests performed to detect the presence of narcotic substances were admissible at grand jury, although they constituted hearsay. The court made it clear that requiring experts to testify regarding tests they had conducted was an

unnecessary inconvenience, and therefore was a sufficiently compelling justification to allow the reports to be admitted themselves. *McKinnon*, 526 P.2d at 27. The court noted that "there is little a technician's physical presence at a grand jury proceeding could add to a laboratory report; the technician could do no more than affirm that he did perform the test reported, and that those tests did indicate the presence of a narcotic substance." *Id.*, at 27–28 & n. 33. *See also State v. Gieffels*, 554 P.2d 460, 465 n. 22 (Alaska 1976); AS 12.45.155 (laboratory report is *prima facie* evidence of the content, identity and weight of a controlled substance).

■ This court addressed the same issue in *Ingram v. State*, 703 P.2d 415 (Alaska App.1985), *petition for hearing granted* (Alaska, October 10, 1985). In *Ingram*, the hearsay evidence presented to the grand jury consisted of testimony by a police investigator as to the results of a laboratory chemical analysis. The investigator read the laboratory report to the grand jury. We held that the report of the chemical analysis in Ingram's case was virtually identical to the type of report considered by the supreme court in *McKinnon*, *i.e.*, an expert opinion based on accepted scientific procedures that yield objective results. *In-*

*gram*, 703 P.2d at 432. The laboratory reports in this case are of the same kind as those in dispute in *McKinnon* and *Ingram*. We therefore conclude that the trial court did not err in determining that the hearsay evidence was admissible at grand jury and in denying Gibson's motion to dismiss the indictment.[1]

## WEIGHT OF THE CONTROLLED SUBSTANCE

Gibson argues that the trial court erred in interpreting the MICS statutes to prohibit the delivery of a specific amount of any substance, as long as any part of the substance contained marijuana.

Alaska Statute 11.71.040 reads in part:

[A] person commits the crime of misconduct involving a controlled substance in the fourth degree if the person

. . . . .

(2) manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more *preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing* a schedule VIA controlled substance; [Emphasis added.]

Alaska Statute 11.71.050 reads in part:

1. Gibson raises several additional claims concerning the use of hearsay to present evidence of the chemical analysis in this case. First, Gibson argues that the state did not show that the hearsay declarant was sufficiently reliable. *See Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972). The laboratory reports clearly identify the declarant as W.H. Chambers, a chemist with the Scientific Crime Detection Laboratory. The reports also state that Chambers conducted the analysis of the marijuana. Finally, the reports requested that the official documents be used in any and all court proceedings in lieu of laboratory personnel. In *McKinnon*, the supreme court held that the credibility of the hearsay declarant and the credibility of the disputed report itself were established by the fact that the author was a technician at a medical laboratory. *McKinnon*, 526 P.2d at 27. In this case, the credibility of the report and the hearsay declarant are also established by the fact that the report was prepared by a laboratory technician.

Gibson also contends that the report in this case was not prepared by a neutral expert, but

by a chemist with the state troopers' lab, and therefore could not be unbiased. The state argues that trial, not grand jury, is the time for cross-examination to test the expert's testimony for bias. This argument is also supported by *McKinnon*, where the supreme court said, "Vigorous cross-examination regarding the competence of the expert or the reliability of the test can hardly be expected in grand jury proceedings." *McKinnon*, 526 P.2d at 28. The chemist who prepared the laboratory report did testify and was cross-examined at trial. We determine that Gibson had adequate opportunity at trial to question the reliability of the report and the bias of its author.

Finally, Gibson argues that the state did not comply with Alaska R.Crim.P. 6(r) by failing to state on the record the reasons for using hearsay evidence rather than live testimony before the grand jury. We are satisfied that the prosecution could properly rely on *McKinnon* and its progeny to justify its use of the hearsay evidence. *See Ingram*, 703 P.2d at 432–33 n. 18.

[A] person commits the crime of misconduct involving a controlled substance in the fifth degree if the person

(1) manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more *preparations, compounds, mixtures, or substances of an aggregate weight of one-half ounce or more containing* a schedule VIA controlled substance, [Emphasis added.]

Marijuana is a schedule VIA controlled substance. It is defined as "the seeds, and leaves, buds, and flowers of the plant (genus) Cannabis ..." AS 11.71.900(14). The definition excludes, *inter alia,* the plant stalks, fiber from the stalks, and sterilized seeds.

Gibson contends that in order to be convicted of either MICS offense, he must have delivered the specified amount of marijuana, excluding the weight of any stalks, fiber or sterilized seeds. Gibson's theory is that "aggregate weight" should be determined by the amount of marijuana "when reduced to its commonly used form." This language is found in AS 11.71.080 (aggregate weight of live marijuana plants). He argues that this definition would be consistent with the definition of marijuana in AS 11.71.900(14), which excludes stalks, fiber and sterilized seeds.

■ To interpret the terms of a statute, we must first look to the plain meaning of the language in the act. *See Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917); *Wilson v. Anchorage,* 669 P.2d 569, 571–72 (Alaska 1983). *See also* AS 01.10.040; 2A N. Singer, *Sutherland Statutory Construction* § 46.01 at 73–74 (Sands 4th ed. 1984). In this case, both statutes state that the defendant must be found to have "preparations, compounds, mixtures or substances ... containing [marijuana]." Webster's defines "compound" as "1. a thing formed by

the mixture or combination of two or more parts or elements." *Webster's New World Dictionary* 291 (2d college ed. 1980). The words "preparations," "mixtures," and "substances" have similar definitions. Our reading of the statute on its face is that in order to be convicted of MICS, Gibson need only to have delivered a combination of ingredients that included marijuana; it is the total weight of the entire substance delivered that determines the degree of the offense.

■ The definition of marijuana in AS 11.71.900(14), upon which Gibson relies, is for the purpose of determining whether or not a person could be charged with marijuana possession or delivery, but has nothing to do with determining aggregate weight. We find that in order to be charged with MICS involving marijuana, a person must be in possession of a substance that contains its seeds, leaves, buds or flowers; merely possessing stalks, fibers or sterilized seeds would not be enough. The controlling statutes as to weight are the charging statutes themselves, AS 11.71.040 and AS 11.71.050. All that is necessary under the statute is that the substance delivered contains marijuana, and that the aggregate weight of the substance meets the statutory requirement. Gibson's argument on the weight issue is therefore unpersuasive.[2]

Gibson's reliance on AS 11.71.080 is also misplaced. The language "commonly used form" from AS 11.71.080 refers to the method of calculating the aggregate weight of live marijuana plants. Since the marijuana in this case was already dried and processed, the definition in AS 11.71.080 does not apply.

### SENTENCE

Gibson was subject to a two-year presumptive sentence on the felony conviction

---

**2.** Gibson also argued that the weight of the marijuana should be determined absent stalks, fiber and sterilized seeds, because penal statutes should be narrowly construed in favor of the defendant. *See* 3 C. Sands, *Sutherland Statutory Construction* § 59.03 at 6–8 (4th ed. 1974). Gibson misunderstands the operation of this

rule. Criminal statutes are to be construed narrowly only to the extent that they are ambiguous. *Anchorage v. Lloyd,* 679 P.2d 486, 487 (Alaska App.1984). Because we have concluded that the charging statutes are clear on their face, that rule of construction does not apply.

as a second felony offender. AS 12.55.-125(e)(1). In 1979, he was convicted of burglary not in a dwelling. Former AS 11.20.100. At sentencing, Judge Blair determined, *sua sponte*, that two aggravating factors existed: first, that the defendant was on probation at the time the crime was committed, AS 12.55.155(c)(20); and second, that Gibson's prior felony was more serious than the current offense, AS 12.55.155(c)(7). Based on the aggravating factors, Gibson was sentenced to a total of five years with two and one-half years to serve for both the felony and misdemeanor counts. He was also ordered to serve eleven months of a previously suspended sentence for his burglary conviction as a result of probation revocation because of the MICS charges. Judge Christopher Cooke (the sentencing judge for the probation revocation) ordered that the eleven months be served consecutively to any sentence on the MICS charges.

 Gibson contends that the sentence must be vacated because he was not given notice as to any applicable aggravators prior to sentencing. The state gave notice that presumptive sentencing applied in this case, but did not file notice of any aggravating factors. Nor did Gibson have notice that at sentencing Judge Blair would, *sua sponte*, determine that the two aggravating factors noted above applied to Gibson's case.

The state concedes that Gibson's case must be remanded for resentencing because he was not "given an opportunity to marshall the relevant evidence" as to the aggravating factors found by Judge Blair. *Hartley v. State*, 653 P.2d 1052, 1056 (Alaska App.1982). The state also concedes that Judge Blair was incorrect in finding the aggravator that Gibson's prior felony was of a more serious class. Burglary not in a dwelling has been replaced by second-degree burglary under the new code, and is a class C felony, as is fourth-degree MICS. *Compare* AS 11.46.310(b) *with* AS 11.71.-040(d).

We are satisfied by our review of the record that the trial court erred in not affording Gibson the opportunity to be heard regarding the aggravating factor that he was on probation at the time of the offense. The trial court also erred in finding the aggravating factor that his prior felony was of a more serious class than the present offense. Accordingly, to correct these errors, the case must be remanded for resentencing.

Gibson also argues that his overall sentence is excessive because it is longer than two years, which is the presumptive term for the felony MICS charge. In *Lacquement v. State*, 644 P.2d 856, 862 (Alaska App.1982), we held that consecutive sentences for more than one offense may not exceed the presumptive term for the more serious offense unless lengthier incarceration is necessary to protect the public.

The state argues that Gibson is a professional criminal and therefore requires a longer term of confinement for deterrence and rehabilitation than the two-year presumptive term for a second felony offender. *See Bolhouse v. State*, 687 P.2d 1166, 1175–76 & n. 12 (Alaska App.1984). The state bases its argument on the fact that Gibson has a poor record as a probationer, and that he was found to be making a substantial portion of his living from selling illegal drugs.

Gibson argues that he was convicted of selling a relatively small amount of marijuana, which has long been characterized as the least serious kind of drug offense. He points to a past successful business venture and his good record while in custody for the MICS charges as evidence that he is not a dangerous criminal and has good prospects for rehabilitation, and therefore should not be sentenced to longer than the presumptive term.

Gibson's prior record consists of several traffic violations as well as the burglary conviction. The burglary involved breaking into a gas station at which he had previously worked and taking $150 from the station safe in order to purchase alcohol. While on probation for the burglary conviction, Gibson was found to have vio-

lated probation three times. These are factors which should be considered by the trial court on resentencing.

 On remand, Gibson's overall sentence must be determined in light of our decision in *Lacquement.* The court should state its findings for the record, if it determines that Gibson's sentence should exceed the two-year presumptive term.[3]

The judgment of the superior court is AFFIRMED. The sentence is VACATED and the case REMANDED for resentencing.

3. Gibson also questioned Judge Cooke's decision to impose the eleven-month reimposition of sentence from the burglary charge consecutively to the sentence in this case. Our recent decision in *Jennings v. State,* 713 P.2d 1222 (Alaska App. 1986) held that under AS 12.55.025(e) trial judges are required to impose consecutive sentences on individuals convicted for crimes which were committed after they had been imprisoned on a former offense. *Jennings,* 713 P.2d at 1223. Under *Jennings,* since Gibson's current offense was committed after his suspended imposition of sentence on the burglary conviction, his current sentence was required to be consecutive to any sentence remaining on the burglary offense. *But cf. Joseph v. State,* 712 P.2d 904, 906 (Alaska App.1986) (judge in probation revocation hearing has discretion not to revoke probation, thereby avoiding the legal mandate that if a suspended sentence is reimposed, it must be served consecutively to any subsequent sentence).