**Peggy EWELL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1349.**

Court of Appeals of Alaska.

Dec. 19, 1986.

John B. Salemi, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Renee R. Erb, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and JEFFERY, Superior Court Judge.*

## OPINION

SINGLETON, Judge.

Peggy Ewell pled *nolo contendere* and was convicted of one count of theft by taking in the second degree, a class C felony. AS 11.46.130(a)(1). On February 1, 1983, Judge Victor D. Carlson entered judgment suspending imposition of sentence for four years. Ewell was required to serve one year's incarceration and three years' probation, and to refrain from further criminal activity while on probation. She was also required to pay $25,000 in restitution. Thereafter, Judge Carlson granted Ewell a sentence reduction, pursuant to Alaska Rule of Criminal Procedure 35(a), and permitted her release from incarceration after serving approximately four months with credit for time served.

On February 27, 1985, the state petitioned to revoke Ewell's probation, alleging that in August of 1984, Ewell defrauded her then employer by forging and uttering checks in a total amount of $1,288.90. Sentencing was continued on a number of occasions and ultimately scheduled for December of 1985. Shortly before the date assigned for sentencing, the state learned that Ewell had embezzled approximately $17,000 from a subsequent employer.

Ewell and the state entered into plea and sentencing negotiations and reached an agreement whereby Ewell agreed to admit the recently disclosed thefts with the understanding that all pending charges would be dismissed and judgment entered solely on the pending probation revocation. It was further agreed that Ewell would be subject to the five-year maximum sentence for her original class C felony with credit for time served, but that Ewell would be free to argue at sentencing that some of the five-year term should be suspended.

The trial court accepted the agreement of the parties and Ewell's admission of the allegations of the petition. After hearing argument from the parties, and considering psychological evaluations of Ewell and an updated presentence report, the court imposed the full five years without suspending any time. However, Judge Carlson allowed credit for time Ewell had already served in prison. Ewell appeals, contending that the sentence is excessive. We affirm.

## THE OFFENSES

Between August 1, 1981, and January 31, 1982, Ewell, while employed in the catalog department at J.C. Penney & Co., stole over $30,000 in miscellaneous merchandise. Essentially, Ewell submitted numerous false catalog orders to the company using fictitious names, removed the property when it arrived, and adjusted the accounting records to conceal her thefts. Ewell voluntarily returned some of the property to J.C. Penney, and additional property was seized when she permitted J.C. Penney's employees to search her home. The company valued the returned merchandise at approximately $5,000, leaving a balance due of $25,000, which Ewell was ordered to pay as restitution. She ultimately borrowed this amount from her father and paid J.C. Penney in full.

* Sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

Ewell was sentenced to prison on February 1, 1983, to serve one year as a condition of her suspended imposition of sentence. On March 25, 1983, she successfully petitioned the trial court to reduce her sentence, pursuant to Alaska R.Crim.P. 35(a). By order dated May 5, 1983, Judge Carlson commuted her sentence to four months with eligibility for good time.

After her release from prison, Ewell lived with her husband and family, contributing to their joint support by babysitting on a part-time basis. She continued babysitting until mid-July of 1984 when she became employed by the Dorie Clark Real Estate Company as a receptionist-secretary. She served in that capacity for about six weeks until approximately the first week of September 1984 when she was fired. Ewell immediately went to work for Republic Automotive where she was responsible for accounts payable and accounts receivable.

In the meantime, Dorie Clark discovered that Ewell had forged four checks in the amount of $1,288.90. These checks formed the basis for the state's petition to revoke Ewell's probation filed in February of 1985. The petition to revoke Ewell's probation was pending between February and September of 1985, during which time Ewell continued to work for Republic Automotive. In fact, the president and general manager of Republic and a number of Ewell's co-workers wrote letters of recommendation to Ewell's probation officer to aid her in the upcoming probation revocation. Illustrative is the following from the president and general manager of Republic Automotive:

TO WHOM IT MAY CONCERN:

Peggy Ewell has been an employee of Republic Automotive since September 6, 1984.

During this period of time she has been in charge of our accounts receivables and payables. This is a very responsible position handling large sums of money.

Peggy has proven to be a very dependable and loyal employee. She gets along well with other employees and appears to be of high moral character.

If you would desire further information, please feel free to contact me at your convenience.

It appears that Ewell began stealing from Republic almost immediately upon obtaining employment there. An audit of Republic's books indicated that during her employment Ewell had stolen approximately $17,000.

### THE OFFENDER

Ewell was born on May 10, 1958, and was twenty-four years of age when she defrauded J.C. Penney. At the time she defrauded Dorie Clark and Republic Automotive she was approximately twenty-seven years of age. Prior to her conviction for defrauding J.C. Penney, Ewell had no adult or juvenile record and, in fact, had never been convicted of a traffic violation. Ewell is currently separated from her husband and, but for her incarceration, apparently would have custody of her three minor children. Ewell is a high school graduate and has attended college for a period of two months and a vocational school for approximately one year. She served in the United States Air Force and was honorably discharged in 1981. Prior to that time, she seems to have been steadily employed since graduating from high school.

In anticipation of her probation revocation, Ewell was examined by a licensed clinical psychologist, James F. Harper, Ph.D. Dr. Harper summarized his conclusions as follows:

Ms Ewell appears to be a person who is strongly in need of psychotherapy. However, she will be a difficult person to treat because she must face humiliation in confronting painful memories, feelings and behavior. Furthermore, Ms Ewell may be unwilling to re-experience the false hopes and disappointments usually awakened by exploratory therapy. The therapist will need to be careful not to set goals too high or to press changes too fast since this woman cannot tolerate demands or expectancies very well at the

present time. Efforts should be made to build her trust, direct attention to her positive traits and thereby enhance her confidence and self-esteem. This therapy has. been recommended to Ms Ewell, and she seems willing to pursue it. It is this examiner's opinion that Ms Ewell does not suffer from an antisocial personality disorder. In many ways, and in spite of her recent legal history, Ms Ewell is a very conforming person who is fearful of social rejection. It is felt that her illegal behavior with her most recent employers arises as an unconscious conflict about taking care of herself versus being taken care of by others. Ms Ewell suffers from a deep conflict between the desire to be more autonomous and the fear that she cannot make it on her own. She is resentful of her own dependency needs and of those upon whom she depends. She continues to dig herself further into a hole in this regard by having more and more children who will need financial support for a number of years. It is felt that Ms Ewell was resentful of having to work at J.C. Penney's [sic], and that she did not resolve the conflict with her husband in a satisfactory manner. It is also recommended that her husband be part of counseling for a period of several months so that marital issues and conflicts can be explored and resolved. If Ms Ewell is able to undergo a program of treatment for approximately two to three years, the prognosis for a better social adjustment is good.

At Dr. Harper's suggestion, Ewell was seen on a continuing basis by Joan Bender, who holds a Master of Sciences in Education Degree in Counseling Psychology. In a report dated September 3, 1985, Bender stated that Ewell had seen her approximately nineteen times from March 25, 1985, to August 29, 1985. Bender's findings parallel those of Dr. Harper's.

At the hearing on December 13, 1985, Bender indicated that Ewell was suffering from what is characterized as the "abused woman syndrome." She defined this as follows:

Women who have suffered sexual or physical or emotional abuse tend to have several characteristics in common. Among them, very low self-esteem—they don't know how to take care of themselves, they are very inadequate—they feel very inadequate, very weak. A lot of their feelings are repressed. That means they're not in touch with them and they don't know how to deal with them. And they try very hard to do anything to avoid the abuse. They tend to feel very guilty, as though it's all their fault somehow. And very, very passive people. Very guarded, very often.

Bender noted that Ewell had been emotionally abused by her husband and as a child, sexually abused by a relative. As a result, in Bender's view, Ewell had many suppressed feelings of hostility and anger that she would not deal with constructively but which were manifested in her abnormal behavior. Bender felt that Ewell was progressing favorably in counseling.

## DISCUSSION

A number of decisions of our Alaska Supreme Court and of this court are helpful in evaluating Ewell's sentence. In *Leuch,* the supreme court suggested that first felony offenders convicted of property crimes should ordinarily receive a probationary sentence with restitution, and defined a probationary sentence as sixty, or fewer, days of incarceration. *Leuch v. State,* 633 P.2d 1006, 1013 n. 22 (Alaska 1981). Aggravating factors may warrant a sentence in excess of sixty days, but a first offender should normally receive a more favorable sentence than the presumptive sentence for a second offender. *Austin v. State,* 627 P.2d 657 (Alaska App.1981). The presumptive sentence for a second conviction of a class C felony is two years' incarceration. AS 12.55.125(e).

Ewell's thefts from J.C. Penney were aggravated. She engaged in numerous thefts during an approximate six-month period. More significantly, when her thefts are totaled together they amount to over $30,000, which would have justified charging Ewell with a higher degree of offense.

*Compare* AS 11.46.980(c) (in determining the degree or classification of a crime under this chapter, amounts involved in criminal acts committed under one course of conduct, whether from the same person or several persons, shall be aggregated) *with* AS 11.46.120 (a person commits the crime of theft in the first degree [a class B felony] if he commits theft as defined in § 100 of this chapter and the value of the property or services is $25,000 or more). Consequently, the trial court could properly characterize Ewell's conduct as among the most serious included in the definition of the offense as a class C felony. *See* AS 12.55.-155(c)(10).

In addition, it would be inappropriate to consider Ewell as having committed but a single offense. *See Witt v. State,* 725 P.2d 723 (Alaska App.1986) (when probation is revoked trial court must consider original offense and defendant's intervening conduct). As part of the plea and sentence agreement she entered into with the state, the court was permitted to consider two separate criminal episodes which Ewell committed after her release from incarceration. Had she been separately charged, Ewell would have been vulnerable to a two-year presumptive term for each of these offenses. *See* AS 12.55.125(e)(1).

Since Ewell was on probation for the J.C. Penney thefts at the time she committed the Dorie Clark thefts, she would have been vulnerable to an aggravated sentence, AS 12.55.155(c)(20) (recognizing status as probationer as an aggravating factor), and under our prior decisions should have received a sentence consecutive to the sentence imposed for her probation revocation. *Gibson v. State,* 719 P.2d 687, 692 n. 3 (Alaska App.1986); *Dodd v. State,* 686 P.2d 737, 739 (Alaska App.1984) (where a defendant commits a new offense while on probation, imposition of suspended time consecutive to sentence for new offense is appropriate). Further, it appears that Ewell was continuing to steal from Republic Automotive after she was notified that the Dorie Clark thefts had been discovered and a petition to revoke her probation had been filed. *Cf. Gilbert v. State,* 706 P.2d

345, 347 (Alaska App.1985) (disapproving imposition of entire suspended term where probation violations did not include new criminal episodes).

In summary, Ewell's consistent criminal behavior, her inability to learn from prior incarceration and probation, and the amounts of her thefts all warrant treating her as a worst offender, subject to a maximum term. *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975). *See State v. Graybill,* 695 P.2d 725, 730–31 (Alaska 1985) (stressing importance of repetitive criminality in determining whether a person is a "dangerous offender" and a "worst offender").

Accordingly, we find that the trial court was not clearly mistaken in imposing a sentence of five years with credit for time served. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence of the superior court is AFFIRMED.

COATS, J., not participating.