George C. BETZNER, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–1707, A–1738.

Court of Appeals of Alaska.

Feb. 10, 1989.

Brant McGee, Public Advocate, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and PEGUES, Superior Court Judge.*

## OPINION

COATS, Judge.

In 1983, George Betzner was involved in an armed robbery of Peninsula Furs in Sterling. Daniel Medwin and Gary Newcomb were also involved in the robbery. Betzner was indicted on three counts. Count I charged burglary in the first degree, AS 11.46.300(a)(1); Count II charged robbery in the first degree, AS 11.41.-500(a)(1); and Count III charged assault in the third degree, AS 11.41.220(a)(1).

Betzner pled no contest to robbery in the first degree, pursuant to a plea agreement. In addition to pleading no contest to the first-degree robbery charge, Betzner agreed to testify against Medwin and Newcomb. In exchange, the state agreed to dismiss the burglary and assault charges as well as an unrelated theft charge.

As a first felony offender Betzner was subject to a seven-year presumptive term for the robbery. Under the terms of the agreement, the state would be permitted to file aggravators, but Betzner would not be permitted to file mitigators. In the event the trial judge determined that the presumptive term should be increased, the parties agreed that the aggravated portion of the sentence would be suspended, provided that Betzner testify against Newcomb and Medwin. The parties also agreed that the probationary period would be five years. In the event the trial judge did not aggravate the presumptive term, Betzner's refusal to testify against his codefendants would void the agreement. The agreement further provided that Betzner would not be classified to any correctional facility where either Newcomb or Medwin was incarcerated.

Superior Court Judge Charles K. Cranston accepted Betzner's no contest plea after ascertaining that the plea was entered knowingly and intelligently. At the sentencing hearing, Judge Cranston found that three aggravating factors had been established by clear and convincing evidence. These factors were: (1) that Betzner had a history of assaultive behavior, AS 12.55.155(c)(8); (2) that Betzner should have known that the victim of the offense was particularly vulnerable, AS 12.55.-155(c)(5); and (3) that Betzner's conduct was among the most serious conduct included in the definition of the offense, AS 12.55.155(c)(10). Judge Cranston aggravated Betzner's sentence by three and one-half years. In accordance with the plea agreement, the three and one-half years were suspended, resulting in a sentence of ten and one-half years' imprisonment with three and one-half years suspended. Betzner was placed on probation for five years. A special condition of probation was that Betzner would testify truthfully in accordance with the plea agreement.

Betzner testified at Medwin's sentencing hearing. Prior to testifying against Medwin, Betzner was housed in the same institution as Medwin, Cook Inlet Pretrial Facility, in violation of the plea agreement. On the morning Betzner testified against Medwin, the two men found themselves face to face. They travelled together to the airport, seated alone in the back of a van, and they flew to Kenai and back to Anchorage

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

on the same airplane. Betzner protested to the troopers, but to no avail.

Newcomb's trial before Judge James K. Singleton was scheduled to commence on January 14, 1986. On January 13, the investigating officer went to see Betzner in prison to discuss Betzner's testimony. Betzner refused to speak with the officer. Based on this incident, the prosecutor asked Judge Singleton for a continuance in order to restructure the state's case without Betzner's testimony. Judge Singleton held a hearing to determine whether Betzner would in fact refuse to testify. Betzner told Judge Singleton that he was going to refuse to testify at Newcomb's trial because he was afraid of perjuring himself, and because of a pending lawsuit instituted by the victim of the crime. Betzner told Judge Singleton that he understood the possible consequences of his refusal to testify, including the imposition of the three and one-half years of suspended time, the reinstitution of the charges which the state had dismissed as part of the plea agreement, and the institution of contempt charges.

In light of Betzner's position, Judge Singleton granted the state a thirty-day continuance. Judge Singleton then held a hearing to rule on Betzner's fifth amendment privilege. During a dry run of direct examination, Betzner initially refused to answer any questions regarding the robbery. Betzner's counsel argued that Betzner's testimony was privileged because the state might seek to rescind the plea agreement. The prosecutor assured Judge Singleton and Betzner's counsel that the state would not attempt to reinstate the dismissed charges. Betzner then answered some of the prosecutor's questions. He refused, however, to answer any questions about his relationship with Newcomb. He argued that inasmuch as Newcomb was a fugitive from justice in 1981–83, he feared that his answers would tend to incriminate him of the crime of harboring a fugitive. Judge Singleton then granted a continuance until March 24, 1986.

On March 28, 1986, a new hearing was held by Judge Singleton to determine whether Betzner would testify. The state had obtained a grant of use immunity from the federal authorities; however, Betzner refused to take the oath unless he received transactional immunity. After Betzner refused Judge Singleton's order to take the oath, Judge Singleton held Betzner in civil contempt. Newcomb was then brought to trial, which ended in a mistrial because of a hung jury.

On April 2, 1986, the state filed a petition to impose Betzner's suspended sentence on the ground that Betzner had breached the plea agreement on March 28 when he refused to be sworn as a witness at Newcomb's trial. An evidentiary hearing on the petition was held on May 21 before Judge Cranston.

On July 18, 1986, Judge Cranston issued a written decision on the state's petition to impose suspended time. He ruled that Betzner's breach of the plea agreement constituted "good cause" under AS 12.55.-110 to revoke Betzner's probation. Alternatively, he ruled that the proper remedy for Betzner's breach of his promise to testify truthfully against Newcomb was the remedy set forth in paragraph seven of the plea agreement, i.e., the imposition of the suspended time. Judge Cranston, having found that he could impose the suspended time, scheduled a hearing for the purpose of determining what portion of the suspended time would actually be imposed.

A hearing was held on July 30 and on August 1, 1986. Betzner testified that he was currently incarcerated at the Wildwood Correctional Facility. He claimed that he had refused to testify at Newcomb's trial because he was afraid that, if he did, his wife and stepson might be physically harmed. Betzner explained that he had testified against Medwin because he was not afraid of Medwin.

Betzner testified that he and Newcomb had been friends for more than ten years. In 1975, he and Newcomb had been involved in an altercation in which the victim was stabbed several times. Betzner was convicted of voluntary manslaughter. The conviction was set aside after Betzner completed probation.

Sometime in 1979 or 1980, Newcomb asked Betzner to take care of Newcomb's wife while Newcomb spent five months in jail for assault with a deadly weapon. When Newcomb was released, he informed Betzner that he was not satisfied with the care his wife had received and proceeded to beat Betzner up.

In spite of this incident, Betzner allowed Newcomb and Newcomb's wife to live with him in Alaska for about a year in 1982–83. Betzner was best man at Newcomb's wedding on February 14, 1983 (four days after the fur robbery). Apparently, Newcomb had divorced the woman he was married to in 1979.

Betzner testified that he had intended to testify against Newcomb when he signed the plea agreement, but that he decided against it when he received what he perceived to be threats against him and his family. In late 1985, Betzner saw another inmate named James Charles while the two were in the chow line. Charles asked Betzner if he was going to testify against Newcomb. When Betzner responded in the negative, Charles said something to the effect of "That's good." According to Betzner, Charles had asked the question in a "pretty menacing manner." This caused Betzner to fear for his safety because Betzner was aware that Charles had beaten up another inmate so badly that the man had to be sent to the hospital. It is not clear when or why Charles beat up the other inmate.

Betzner also received a visit from Holden Curry in late 1985. Curry was a friend of Newcomb's, and both Curry and Newcomb were members of a biker's gang. Curry told Betzner that things would probably drastically change for Betzner's wife and son if Betzner were to testify against Newcomb.

Betzner was aware that Newcomb was serving an eleven- to thirteen-year sentence in California. Nevertheless, Betzner was afraid that one of Newcomb's biker friends from California would track him and his family down. Betzner conceded that he knew about Newcomb's biker friends before he entered into the plea agreement

with the state. He also knew that other prisoners did not like people who testified for the state against co-defendants. Betzner had not previously mentioned the threats, and he did not mention his fears when Judge Singleton directed him to show cause why he should not be held in contempt.

Judge Cranston reiterated his earlier finding that Betzner's refusal to testify against Newcomb constituted "good cause" under AS 12.55.110 to impose the suspended sentence. Judge Cranston treated the issue as one of contract law: Betzner breached the plea agreement, and the court had to fashion an appropriate remedy. Judge Cranston refused to consider Betzner's claim of duress, stating that the claim might be relevant to a contempt charge, but not to a breach of the plea agreement. Although he did not believe it was necessary to do so, Judge Cranston discussed the *Chaney* criteria. He then imposed the full three and one-half years of suspended time.

Betzner now appeals Judge Cranston's decision to impose the three and one-half years of suspended time on the robbery conviction. The appeal has been docketed as case number A–1707.

Following the hung jury at his first trial, Newcomb was retried in August 1986. On August 4, the state called Betzner as a witness. As in March, Betzner refused either to be sworn as a witness or to answer any questions. Judge Singleton, reminding Betzner that he had previously ruled that Betzner had no legal basis upon which to refuse to testify, ordered Betzner to show cause why he should not be held in civil contempt. Betzner said nothing; he refused to tell Judge Singleton about his testimony before Judge Cranston regarding his fear of Newcomb. Judge Singleton then held Betzner in civil contempt.

On August 28, 1986, Betzner was charged by information with three counts of criminal contempt in violation of AS 09.50.010(5) and (10). Each count referred to Betzner's refusal to testify or to be sworn as a witness on a different date, *i.e.*, Count I referred to Betzner's January 24th

refusal, Count II referred to his March 28th refusal, and Count III referred to his August 4th refusal. Each count alleged that Betzner's refusal prejudiced the right of a party, the state. Thus, under AS 09.50.020, the maximum penalty for each count was six months' imprisonment or a $300 fine.

Betzner appeared before Magistrate Brigitte McBride, waived counsel, and pled no contest to the three charges of contempt. Magistrate McBride advised Betzner of his rights and of the maximum penalty for each count. Betzner waived his rights, and his pleas were accepted. Magistrate McBride proceeded immediately to sentencing.

Magistrate McBride found that the state had been prejudiced each time Betzner refused to testify. Magistrate McBride rejected Betzner's claim of duress, finding that Betzner, at the time he entered into the plea agreement, was well-aware of Newcomb's violent tendencies. Magistrate McBride sentenced Betzner to six months on each of the three charges. She further ordered the sentences to run consecutively to each other and to the ten and one-half-year sentence on the robbery conviction. Betzner now appeals those sentences. That appeal has been docketed as case number A–1738.

## PROBATION REVOCATION

Betzner first argues that Judge Cranston erred in revoking his probation and imposing the suspended time, contending that the special condition of probation which required him to testify was illegal. He next argues that he could not be held responsible for violating the special condition of probation because he was acting under duress. Betzner also argues that Judge Cranston erred in revoking his probation because Betzner was not subject to special conditions of probation until after he had served his sentence and was released on probation.

In response, the state first contends that this case merely involves the enforcement of a contract, i.e., the plea agreement. Betzner and the state entered into an agreement. Betzner violated that agreement, and Judge Cranston enforced the contract between Betzner and the state. In the alternative, the state points out that by refusing to testify, Betzner committed a crime—contempt of court. Because Betzner committed a crime by refusing to testify, the court had good cause to revoke Betzner's probation.

■ We have some problems with the state's contract analysis for reasons we will discuss more fully later in this opinion. We agree, however, with the state's alternative theory. Betzner pled no contest to three counts of criminal contempt based upon his refusals to obey Judge Singleton's orders to testify. This court and the Alaska Supreme Court have held that a trial court may revoke probation and impose a suspended sentence when the defendant has committed a crime before his probationary period starts. *Gant v. State*, 654 P.2d 1325, 1326–27 (Alaska App.1982); *see also Wozniak v. State*, 584 P.2d 1147, 1148 (Alaska 1978). Although Judge Cranston did not rely on this ground in revoking Betzner's probation, he did revoke Betzner's probation on the ground that Betzner refused to testify. Under these circumstances, it seems clear that Judge Cranston properly revoked Betzner's probation.

■ Betzner argues that Judge Cranston could not properly revoke his probation because he acted under duress. Betzner claimed that he had a valid excuse for not testifying. Betzner contended that he was afraid that either he or his family would be harmed if he testified against Newcomb. Judge Cranston refused to consider this defense. In response, the state concedes that Judge Cranston erred in refusing to consider Betzner's duress defense. The state reasons that Judge Cranston erred because duress is a defense to breach of contract. The state argues, however, that the error was harmless because on these facts Betzner could not have established a duress defense.

We agree with the state that Betzner has not established the defense of duress. Alaska Statute 11.81.440 provides:

(a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because the defendant was coerced to do so by the use of unlawful force upon the defendant or a third person, which force a reasonable person in the defendant's situation would have been unable to resist.

(b) The defense of duress is not available when one recklessly places oneself in a situation in which it is probable that one will be subject to duress.

Alaska Statute 11.81.900(b)(22) defines "force" as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement[.]" Betzner's claim of duress was too speculative to qualify as a complete defense. *See* W. LaFave & A. Scott, *Handbook on Criminal Law* § 49 (1972) ("Duress must consist of threatening conduct which produces in the defendant a reasonable fear of immediate or imminent death or serious bodily harm. Threatened future death or serious bodily harm does not suffice."). Furthermore, Betzner did not show that he took any steps to protect himself or his family by reporting the situation to legal authorities. *See Gerlach v. State,* 699 P.2d 358, 362 (Alaska App.1985) (affirmative defense of necessity was not available to defendant because she had not exhausted available legal remedies). The fact that we conclude that Betzner was not entitled to duress as a complete defense, however, does not mean that Betzner could not have argued that duress either was a mitigating factor under AS 12.55.155(d)(3) or was otherwise relevant in determining an appropriate sentence.[1]

Betzner argues that Judge Cranston erred in imposing the three and one-half years of suspended time. The state essentially defends Judge Cranston's action, arguing that Betzner breached his agreement with the state and that the proper remedy was the imposition of the suspended time.

In revoking Betzner's sentence, Judge Cranston indicated that he was imposing the three and one-half year suspended sentence to enforce the plea agreement. He originally stated that he did not believe that it was necessary, in imposing sentence, to consider the *Chaney* sentencing criteria. When the state recommended that the court consider the *Chaney* criteria, Judge Cranston made further remarks for the record. Judge Cranston did not believe that it was necessary for him to impose the additional three and one-half years to rehabilitate Betzner or to protect the public. Judge Cranston said that the primary reasons for imposing the suspended sentence were to enforce the plea agreement and to deter other defendants from disregarding similar agreements. The state argues that this was proper. We disagree.

In *Kanipe v. State,* 620 P.2d 678, 679 (Alaska 1980) (citations omitted), the court stated:

We review sentences for excessiveness based upon the nature of the offense, the character of the offender, and the need for protecting the public. When a sentence is imposed following probation revocation, the sentencing judge must consider the same criteria as those considered initially upon conviction of the underlying offense. Imposition of jail time is not necessarily called for simply because the expressed terms of probation have been violated.

In *Crouse v. State,* 736 P.2d 783, 787 (Alaska App.1987) (citations omitted), we stated:

Certainly, [when a court revoked probation,] the court can consider intervening conduct, and the circumstances of the original offense, as well as the defendant's background and experience as they existed at the time of the original sentencing. However, the total sentence must nevertheless be justifiable when compared to sentences received by sim-

---

**1.** We recognize that Betzner agreed that he would not present any mitigating factors at sentencing. As we explain later in the opinion, however, we believe that in deciding what sentence to impose, Judge Cranston was required to sentence Betzner based upon an application of the normal sentencing criteria. We believe that this entitled Betzner to argue the application of mitigating factors.

ilar defendants committing similar crimes.

We believe that these cases make it clear that when a defendant violates probation, the court must apply the *Chaney* criteria, emphasizing the original offense, the offender, and the defendant's intervening conduct. The fact that the probationer violated probation or broke an agreement, standing alone, cannot be given primary consideration. Because the trial judges' remarks appear to place undue emphasis on the fact that Betzner violated his probation and his plea agreement with the state, we conclude that we must remand this case for resentencing under the sentencing provisions of both Title 12 and the *Chaney* criteria. In sentencing Betzner, the trial judge should consider whether Betzner is able to establish duress as a mitigating factor. The court may also consider any duress in its application of the *Chaney* criteria.[2]

## CONTEMPT SENTENCES

■ Under AS 09.50.010, contempt is punishable by a fine of not more than $100 unless the right or remedy of a party has been defeated or prejudiced. If a party has been prejudiced, the penalty is a fine of not more than $300 or imprisonment for not more than six months. AS 09.50.020. Betzner was charged with three counts of criminal contempt. The information specifically alleged that Betzner's refusal to testify prejudiced the rights of a party. Betzner, representing himself, pled no contest to all three counts. Before Betzner entered these pleas, Magistrate McBride advised him that the potential punishment for each of the contempt charges was a $300 fine or six months' imprisonment. Betzner

indicated that he understood the potential punishment. Magistrate McBride found that the state had been prejudiced by each of Betzner's counts of contempt because the state was deprived of the testimony of a significant witness. Betzner argues that Magistrate McBride's finding was erroneous.

Betzner argues that his refusals to testify did not prejudice the state because Newcomb was ultimately convicted. Magistrate McBride found that on Count I (Betzner's refusal to answer questions on January 14, 1986) the state was prejudiced because it was forced to seek a two-month continuance. On Count II (Betzner's refusal to be sworn as a witness on March 28, 1986), Magistrate McBride found that the state was prejudiced because Newcomb's trial ended in a mistrial. On Count III (Betzner's refusal to be sworn as a witness on August 4, 1986), Magistrate McBride found that the state was prejudiced because it was deprived of an important witness.

It appears that AS 09.50.020 was largely derived from an Oregon statute, ORS 33.-020(1).[3] Therefore, Oregon cases interpreting the Oregon statute are persuasive in interpreting AS 09.50.020. *See Nicholson v. Sorensen,* 517 P.2d 766, 770 n. 9 (Alaska 1973).

In *The Matter of Hanks,* 290 Or. 451, 623 P.2d 623, 626 (1981), the Oregon Supreme Court found that the rights of the litigants were prejudiced because their cases were held up longer than they should have been by the defendant's failure to file court-ordered transcripts. In *State v. Tripp,* 36 Or.App. 141, 583 P.2d 591 (1978), a case which appears to be similar to the present

---

2. Betzner argues that his failure to testify was excused by the state's failure to perform a condition precedent to his performance, namely the state's failure to classify Betzner and Medwin to different correctional facilities. Although this information may reflect on Betzner's duress defense, it would not act to excuse Betzner for committing the crime of contempt by refusing to testify.

3. Oregon Revised Statute 33.020(1) provides:
    Every court of justice and every judicial officer has power to punish contempt by fine

or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or ORS 1.240(1), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.

case, the court held that the refusal of a witness, a victim of sexual abuse, to testify before the grand jury, prejudiced the state because the refusal deprived the state of the testimony of an important witness. Betzner attempts to distinguish *Tripp* on the ground that in *Tripp*, the witness refused to testify before a grand jury specifically convened to investigate the allegations of sexual abuse. In *Tripp*, the witness was "pivotal to establishing whether a serious crime had been committed." *Id.*, 583 P.2d at 594. Without Tripp's testimony, the state was unable to prosecute. Betzner points out that although he was an important witness, he had notified the state well before trial that he would not testify. Furthermore, although Betzner was an important witness, the state was able to secure Newcomb's conviction without his testimony.

We find *Tripp* to be dispositive. Betzner's testimony was important to the state, and the state was prejudiced by its inability to present him as a witness. The inability of the state to present Betzner's testimony prejudiced the state even though the state was ultimately able to secure a conviction.

Betzner next argues that Magistrate McBride erred in sentencing Betzner to six months on each of the three contempt charges and in ordering those sentences to run consecutively to each other and consecutively to the ten and one-half year sentence which he received on the robbery conviction.

Under AS 12.55.025(e), a sentence which is imposed on a new offense must be consecutive to a sentence that is reimposed upon a revocation of probation. *See Gibson v. State*, 719 P.2d 687, 692 n. 3 (Alaska App.1986). Therefore, by law, Magistrate McBride was required to make any contempt sentence run consecutively to Betzner's robbery sentence. In sentencing Betzner, Magistrate McBride found that these were particularly serious charges. She accordingly imposed three consecutive maximum sentences for a total of eighteen months' imprisonment. Standing alone, we do not find that Magistrate McBride's sentence was excessive for these contempt vio-

lations. We therefore conclude that Magistrate McBride was not clearly mistaken in imposing this sentence. Because we are vacating and remanding Betzner's sentence on the robbery charge, we believe that Betzner's total sentence is best considered by having Judge Cranston re-evaluate his sentence on that charge under the standards which we have set forth in this opinion. In evaluating that sentence, Judge Cranston should consider the sentence which Magistrate McBride imposed on the contempt violations in determining an appropriate sentence on the robbery charge.

The sentence is AFFIRMED in part and VACATED in part, with the vacated portion of the case REMANDED for resentencing consistent with this opinion.

BRYNER, C.J., concurs.

PEGUES, J., dissents.

SINGLETON, J., not participating.

BRYNER, Chief Judge, concurring.

I agree with the opinion written by Judge Coats, but think it necessary to separately explain my reasons for concluding that Betzner's case must be remanded for resentencing.

It is well settled that, upon revocation of probation, the sentencing court must determine an appropriate sentence by applying the *Chaney* sentencing criteria to the totality of the circumstances in the case, including the seriousness of the original offense, the seriousness of the violation that gave rise to the revocation, and the nature of the defendant's intervening conduct. *See, e.g., Kanipe v. State*, 620 P.2d 678, 679 (Alaska 1980); *Crouse v. State*, 736 P.2d 783, 786–87 (Alaska App.1987); *Witt v. State*, 725 P.2d 723, 724 (Alaska App.1986); *Gilbert v. State*, 706 P.2d 345, 347 (Alaska App.1985).

In this case, however, the state argues a different theory. Here, Betzner entered into a plea negotiation with the state that called for him to testify against other defendants. The requirement that Betzner testify was incorporated as a condition of his probation. Betzner's probation was revoked after he refused to testify. On ap-

peal, the state asks us to find that, because Betzner entered into a plea agreement that required him to testify as a condition of probation, his violation of the condition automatically justified imposition of the full suspended term.

In rejecting the state's argument, I find it unnecessary to decide whether such a plea agreement might ever properly provide for automatic imposition of a suspended sentence upon a defendant's failure to testify. It is sufficient to note that no express provision to this effect was made in Betzner's plea agreement. The agreement provided only that, in return for Betzner's plea and his promise to testify, any upward adjustment of the applicable presumptive term in his case would be suspended. No express provision was made for the automatic reinstatement of suspended time upon failure to comply with the agreement to testify. More significantly, the agreement did not establish any specific period of suspended time to be imposed as a *quid pro quo* for Betzner's promise to testify. The superior court's remarks at the original sentencing hearing do not indicate what part, if any, of Betzner's three and one-half year suspended term was actually attributable to his promise to testify. Nothing in the original sentencing record establishes that Betzner would have received an unsuspended term of ten and one-half years had it not been for the plea agreement.

Under the circumstances, I must conclude that the task of formulating Betzner's sentence upon revocation of his probation was a matter for the superior court's sentencing discretion. The exercise of that discretion should have been governed not by principles of contract law, but by the normal rules applicable to sentencing in probation revocation cases. My conclusion that resentencing is necessary in this case stems from uncertainty as to whether the superior court exercised appropriate sentencing discretion in determining Betzner's sentence.

It is true, as the state points out, that the court undertook a *Chaney* analysis. Yet the court's discussion of the *Chaney* crite-

ria is ambiguous. Judge Cranston accepted the state's argument that Betzner's entire suspended term should be reimposed as a contractual matter. When asked by the prosecution to address the *Chaney* criteria, the judge at first declined to do so, stating his view that such an explanation was unnecessary. When pressed, the judge eventually addressed the *Chaney* criteria. However, Judge Cranston did so in a manner that suggests that he may simply have been rationalizing the automatic imposition of suspended time in terms of the *Chaney* goals. Judge Cranston said little to indicate that he took into account the nature and seriousness of Betzner's original offense or the relative seriousness of his probation violation. The judge apparently continued to believe that imposition of the full period of time should be automatic, without regard to any consideration other than the fact that Betzner had violated his plea agreement.

It is also true that the sentencing court rejected Betzner's claim of duress. However, the court's ruling appears to have been only that the claim of duress was, as a matter of law, insufficient to qualify as a justification for Betzner's refusal to testify. Judge Cranston did not expressly find that Betzner's claims of fear for himself and his family were not credible or that they were made in bad faith. If the court did believe that Betzner's refusal to testify was actually motivated by a genuine fear of reprisal, this certainly could have mitigated the seriousness of his probation violation, even if it did not excuse the violation altogether. From the record, however, it appears that the sentencing court may never have reached this issue because it believed that, once the probation violation was established, the full period of suspended time should automatically be reimposed. Having decided that duress was not a legal defense in Betzner's circumstances, the court may simply have determined it unnecessary to give any consideration to potentially mitigating circumstances.

Admittedly, it is possible that Judge Cranston did correctly consider the totality of the circumstances in deciding to impose the full three and one-half years of sus-

pended time. The judge may have concentrated his *Chaney* analysis on the probation violation only because of his belief in the overriding importance of Betzner's agreement to testify on behalf of the state. By the same token, it is certainly possible that Judge Cranston did not believe Betzner's explanation for refusing to testify and concluded that he was simply attempting to manipulate the system to his own advantage. Although it is possible to interpret Judge Cranston's sentencing remarks in this manner, I find there is sufficient ambiguity in the record to warrant a remand for resentencing.

I would emphasize that my decision does not imply that the sentence Betzner received below is excessive, or that Judge Cranston would be clearly mistaken in reimposing precisely the same sentence on remand if he believed it to be justified under the totality of the circumstances. Indeed, I recognize that Betzner may deserve to have the full balance of his suspended term imposed. Whatever the sentence Betzner deserves, however, the sentence that he actually receives should be the result of an appropriate application of established sentencing procedures. In this regard, the supreme court has noted:

> Our decisions reveal two kinds of sentence review cases. When the issue is whether the sentence was excessive, we defer to the sentencing court's discretion and will disapprove a sentence only if it is 'clearly mistaken.' *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). When the issue is whether the sentencing court was acting under an incorrect legal assumption, we review for error.

*Campbell v. State*, 594 P.2d 65, 67 (Alaska 1979) (footnotes omitted).

If it appears, on remand, that Betzner's sentence was not the product of "an incorrect legal assumption," I would have little difficulty in concluding that it was not excessive.

PEGUES, Superior Court Judge, dissenting.

I respectfully dissent. The standard for review of a sentence is not whether the reviewing court agrees with the sentencing court's reasons, but whether its sentencing decision has a "reasoned basis" and whether the sentence imposed is "not clearly mistaken." *Hagberg v. State*, 606 P.2d 385, 387 n. 3 (Alaska 1980); *Hughes v. State*, 513 P.2d 1115, 1122 (Alaska 1973).

The majority opinion shows beyond dispute that Judge Cranston's sentencing decision had a reasoned basis (in *Chaney* terms, deterrence of Betzner and others and community condemnation), and there is not the least suggestion that the sentence imposed is clearly mistaken. "It is the [sentencing] court's prerogative to decide the weight and order of priority to be given to each [*Chaney*] goal, based on the circumstances of the individual case." *Smith v. State*, 691 P.2d 293, 295 (Alaska App. 1984).

It is not the function of this court to remand because it disagrees with a sentence or with the reasons for the sentence, unless those reasons are based on an incorrect legal premise. *Campbell v. State*, 594 P.2d 65, 67 n. 6 (Alaska 1979).

The majority and I disagree in our reading of the sentencing record in this case. I read it as showing that Judge Cranston (who, after all, fashioned the sentence) considered the suspended time to be conditioned expressly upon Betzner's testifying truthfully at the trials of his confederates. That is, but for the testimony, the time would have been imposed. Assuming that the time so suspended would not have been clearly excessive had it been originally imposed, its suspension on that condition does not offend any sentencing guidelines. Indeed, it is entirely consistent with the provisions of AS 12.55.155(d)(12), as subsequently amended, which makes assistance in prosecuting others a mitigating factor. Accordingly, the sentence subsequently imposed was not based on an incorrect legal premise or impermissible factor.

Of course, if the imposition of the suspended time were not consistent with the *Chaney* factors (an unlikely event where, as here, the time imposed is not shown to be clearly excessive), then it could be con-

cluded that the condition was itself based on an incorrect legal premise and a remand would be proper. However, Judge Cranston's careful analysis of the applicable *Chaney* criteria, albeit prompted by the prosecutor, shows that enforcement of the condition was entirely consistent with those criteria: deterrence of Betzner and others like him and community condemnation of Betzner's conduct.[1]

I also disagree that the sentences for contempt require re-examination. Deterrence alone justifies them.

1. It is not only unfair to characterize Judge Cranston's *Chaney* analysis as a rationalization but it is also irrelevant. The issue is not whether it was a rationalization. Rather, the issue is whether the factors which were considered and applied gave incorrect weight to the sentencing goals, given the nature of the offense, the character of the offender, and the need to protect society. *Campbell*, 594 P.2d at 67 n. 5. Clearly they did not. To the contrary, the factors considered were right on the mark.