No. 260 March 26, 2025 245

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES STILSON KROPF III,
*Defendant-Appellant.*

Washington County Circuit Court
20CR51953; A179182

Theodore E. Sims, Judge.

Argued and submitted April 29, 2024.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Adam Holbrook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for several counts of first-degree unlawful sexual penetration and first-degree sexual abuse against his then 7- to 10-year-old daughter, O. Defendant raises four assignments of error. First, he assigns error to the trial court's denial of his motion *in limine* to exclude evidence that he had moved from Oregon to Michigan in violation of his post-prison supervision (PPS) requirements.[1] Defendant sought to prevent the state from arguing that those facts were evidence of defendant's consciousness of guilt in trying to avoid the Oregon criminal charges in this case. Second, defendant raises a similar argument that the trial court erred in later denying a motion for mistrial after information was disclosed that may have supported defendant's contention that his move to Michigan had been previously planned and innocently undertaken. The trial court ruled that evidence of defendant's move to Michigan could be used as evidence of flight or consciousness of guilt because it was both relevant and not unfairly prejudicial. The court ultimately admitted the evidence and left it to the jury to determine whether the evidence supported intentional flight. As we discuss below, we conclude that the trial court did not err in denying the motion *in limine*. We further conclude that the trial court did not err in denying defendant's motion for mistrial.

Defendant also argues that the trial court erred in denying his objection to the prosecutor's closing argument that O had stopped making reports of abuse to the Department of Human Services (DHS) after she moved in with her mother. Defendant contends that the prosecutor's argument was based on facts that were not in evidence. As discussed below, we conclude that defendant's argument on appeal was not preserved. We also reject defendant's final assignment of error that contends that the trial court erred in sentencing him to 300 months in prison on Counts 2 and 3 (two counts of first-degree unlawful sexual penetration of a victim under 12). As a result, we affirm the judgment.

---

[1] Defendant was on post-prison supervision in another unrelated matter.

## PRETRIAL MOTION *IN LIMINE*

We start with the issues surrounding the pretrial motion *in limine* and the evidence regarding the circumstances under which defendant left Oregon. We review a trial court's pretrial decision on a motion *in limine* "in light of the record made before the trial court when it issued the order." *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012). The facts below come from the pretrial hearing.

In February 2020, Detective Tim Miller began investigating the circumstances that ultimately led to this case. Those charges, as noted, included allegations that defendant had raped and sexually abused O, a child under 12 years old.

In April 2020, Miller went to defendant's residence. Defendant was not home so Miller left his card with a person who answered the door. Around early May, Miller was able to reach defendant by phone. Miller was purposefully vague about his reason for contacting defendant and told him that "it involved his daughter and his ex-wife."[2] Defendant responded that he did not want to speak with the detective and terminated the conversation.

Miller also testified at the pretrial hearing that he spoke with defendant's supervising officer, Tana Titus. That conversation took place after defendant was indicted on September 18, 2020. Titus indicated that defendant had "likely fled or had fled." Titus relayed that she had last spoken with defendant on May 5, 2020. On that date, defendant informed Titus that the police had come to speak with him and that his "sister and mother had told him about a pending investigation or something to that effect." Titus noted that defendant appeared nervous but stated that he had not done anything wrong. Titus's written notes indicated that defendant had been approached by a detective and that defendant "knew more information from his mother and sister" and that "he does not want to backslide."

Miller further testified at the pretrial hearing that he had spoken with a sister of defendant about the

---

[2] At the pretrial hearing, defense counsel noted that defendant had more than one daughter and no ex-wife. Defendant, in fact, had not been married to O's mother, but she was defendant's ex-girlfriend and they were both parents to O.

investigation. The sister was aware of the investigation, she was best friends with O's mother, and she was a "disclosure witness." Miller testified that he learned that O had disclosed to defendant's sister that something happened relating to defendant and O, and that the sister believed what had happened to O because the sister had had similar experiences with defendant when the sister was a toddler. Miller did not learn the specific details of O's disclosure to defendant's sister.

During his investigation, Miller also received a call from defendant's uncle Philip Wood on July 15, 2021. Miller learned from Wood that defendant was in Grand Rapids, Michigan. Miller learned that defendant was aware that he faced charges that had "something to do with children" and "were filed by his girlfriend because she was jealous." Defendant had told Wood that "it was something to do with the kids and that it was a lie, and [defendant] needed to get out of there."

Before trial, defendant moved to exclude references to the fact that defendant had left the state while on supervision and had moved to Michigan, because it was not relevant evidence under OEC 401 of defendant's consciousness of guilt and was unfairly prejudicial under OEC 403. In particular, defendant argued that there was insufficient evidence that defendant knew of the specific investigation against him or fled because of it. The state responded that there was sufficient evidence to infer that defendant left the state after learning of the criminal investigation into his conduct and that he left to evade prosecution. The trial court concluded that the jury could hear evidence that defendant left the state after learning of the investigation but that defendant could offer evidence or argument on alternative explanations for his move. The court left it up to the jury as a factual issue to draw any inference on why defendant left Oregon.

After the court made that ruling, the court and the parties discussed how the court might limit the prejudicial effect of the references to defendant's supervision status. The court offered to sanitize the record regarding defendant's supervision status to limit any prejudicial reference

to defendant's prior criminal conduct. Namely, the court suggested that it or the parties could let the jury know that defendant's supervision status was tied to defendant's time in prison from 2014 to 2016 for a different conviction. Defendant had intended to and later did offer into evidence his 2014-to-2016 prison sentence as part of his defense that he could not have sexually abused O during that time frame. Defendant rejected the court's offer and maintained his objection. Ultimately, there was no stipulation placed on the record and the state indicated it would just present its witnesses.

Defendant first assigns error to the trial court's ruling that denied defendant's pretrial motion to exclude evidence that defendant left Oregon for Michigan while on supervision status after defendant learned of a criminal investigation. We understand defendant to raise four arguments in support of this assignment of error. First, he contends that the trial court erred because the evidence that defendant left Oregon for Michigan in violation of his supervision status violated OEC 404, mainly because it was based on uncharged misconduct that was not relevant for a non-propensity purpose. Second, defendant argues that any evidence of defendant's move to Michigan was not logically relevant to the case because it was purportedly too speculative to show that defendant fled because of his consciousness of guilt as to the investigated crimes in Oregon. Third, he argues that the trial court erred in admitting evidence of the move because it was unfairly prejudicial under OEC 403. Fourth, in support of all of his arguments, defendant requests that we reexamine prior case law that permits a jury to infer that post-crime evidence of flight may be admissible as evidence of consciousness of guilt because it is a "proposition rooted in bias—that innocent people do not flee."

We briefly address that last argument first as we provide a brief background of the Oregon case law on evidence of "flight." We then proceed to address defendant's arguments in the order that he presents them. We initially observe that both the Supreme Court and our court have concluded that evidence of flight, if established, may be admitted for the purpose of showing a guilty conscience. *See*

*State v. Brown*, 231 Or 297, 300, 372 P2d 779 (1962) ("The purpose of the evidence adduced by the state was to show, after the commission of the crime, flight, concealment, and use of a false name. These facts, if established, are admissible as evidence of a guilty conscience, which is some evidence of guilt."); *State v. Minchue*, 173 Or App 520, 524, 24 P3d 386 (2001) ("Oregon courts have long held that evidence of flight is relevant as circumstantial evidence of guilty knowledge, which is some evidence of guilt."). Defendant has not persuaded us that our case law is plainly wrong, and, in any event, we are bound by the Supreme Court case law. *See State v. Riley*, 195 Or App 377, 380, 97 P3d 1269 (2004), *rev den*, 340 Or 673 (2006) (stating same).

Turning to defendant's arguments that evidence of flight is inadmissible under OEC 404 because it relies on prior uncharged bad conduct, defendant did not raise that argument below or preserve it for our consideration. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (stating that a party must provide the court with an explanation "specific enough to ensure that the [trial] court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately"). In his written motion, defendant argued that evidence of his possible flight while on supervision was inadmissible because it was irrelevant under OEC 401 and unfairly prejudicial under OEC 403. Defendant's oral argument was consistent with that position. At no point did defendant raise OEC 404 or otherwise refer to evidence of flight as based on prior bad acts, prior uncharged crimes or misconduct, or other similar statements that would have fairly given the trial court notice that it needed to consider an OEC 404 issue. Defendant consistently framed the issue solely as one of relevance and unfair prejudice.[3] As such, we do not address arguments beyond those raised in the trial court.

We turn to defendant's arguments that the trial court erred because any evidence of flight was not admissible under OEC 401 and OEC 403. To the extent that

_____

[3] We recognize that issues raised under OEC 404 overlap with issues of relevance and unfair prejudice raised under OEC 403. *See State v. Davis*, 372 Or 618, 633-34, 553 P3d 1017 (2024) (noting that OEC 404(4), by its terms, requires the court to ensure that the evidence is relevant and otherwise admissible under OEC 403). We expressly address the preserved OEC 401 and OEC 403 issues below.

defendant argues that it is categorically inadmissible, we again reject that argument for the reasons discussed above. We also reject defendant's contention that the actual evidence of "flight" was too speculative here to be evidence of consciousness of guilt. Defendant maintains that there was no evidence that he fled *because* of any ongoing investigation. Certainly, much of the evidence was circumstantial, but the evidence presented at the hearing on the motion *in limine* included the following:

- A police detective stopped by defendant's house in April 2020 and left his card.

- The detective reached defendant directly in early May 2020 and told defendant that he wanted to speak with defendant about something involving "his daughter and ex-wife." The detective was purposely vague.

- Defendant's sister was aware of the investigation, was a "disclosure witness," and O had confided with defendant's sister about something that had had happened between defendant and O that apparently had also occurred between defendant and his sister when the sister was young.

- Defendant's supervising officer stated that she last spoke with defendant on May 5, 2020; he appeared nervous about the investigation and denied wrongdoing.

- Defendant's supervising officer stated that defendant told her that defendant's "sister and mother had told him about a pending investigation or something to that effect"; he "knew more information from his mother and sister"; and that "he does not want to backslide."

- Defendant's supervising officer reported that defendant had "likely fled or had fled" Oregon for Michigan despite his supervision status in Oregon.

- Defendant much later told his uncle that he was in Grand Rapids, Michigan, and indicated that he was aware that he faced a charge or charges that had "something to do with children, [and] were filed by his girlfriend because she was jealous."

- Defendant stated to his uncle that "it was a lie, and [defendant] needed to get out of there."

Defendant is correct that the inference that he had knowledge of any specific allegations or charges against him at the time he left Oregon is based, in part, on circumstantial evidence. A reasonable factfinder could also find that defendant did not leave Oregon *because* of the criminal investigation into him. However, taken together, a reasonable factfinder could also infer the contrary—that defendant learned of a criminal investigation into his conduct in which his daughter O had raised allegations against him, had fled to Michigan in response to that charge despite his supervision status, and had remained in Michigan to avoid a criminal charge.

Under OEC 401, relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable * * * than it would be without the evidence." The evidence here meets that low threshold and was not too speculative to infer evidence of defendant's flight, which, as noted, our case law consistently has concluded may be admissible evidence of defendant's consciousness of guilt.

Defendant argues that, alternatively, the trial court abused its discretion in admitting the evidence under OEC 403.[4] Defendant argues that the evidence of flight had minimal probative value and "introduced uncharged misconduct into the case." We conclude that the trial court did not abuse its discretion in admitting the evidence.

The evidence did have some probative value, as discussed above, and permitted the jury to infer that defendant left the state while on supervision to avoid a pending criminal investigation because he believed he was guilty. Defendant's primary argument on appeal is that the evidence inserted prejudicial "uncharged misconduct" into the case based on the fact that defendant was on supervision status.[5] It is true that the jury was made aware that defendant was on supervision status when he left the state. That was a necessary result of the fact that defendant's supervising

_____

[4] OEC 403 provides, among other things, that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."

[5] Defendant raises other arguments relating to unfair prejudice arising from inferences relating to his relationship with his Oregon girlfriend and Michigan fiancée. We reject those arguments without further discussion.

officer had the information and presented the evidence that defendant had stopped reporting to her and had "likely fled or had fled" the state. In addition, the fact that defendant was willing to leave the state *despite* his supervision status itself added probative value—that defendant was willing to risk greater consequences in leaving the state. To the extent that defendant contends that he was unfairly prejudiced because the jury would have inferred from his supervision status that defendant had previously committed a crime, the jury was already aware that defendant had a criminal record because defendant had presented that evidence as part of his defense theory. Defendant's defense relied on the fact that he was in prison during a portion of the time that O asserted that she had been sexually abused. Defendant raised that issue in opening argument, elicited on cross-examination of his daughter that she recalled that he was in jail or prison between 2014 and 2016, and raised the issue again in closing.[6]

On this record, we cannot say that the trial court abused its discretion in weighing the evidence under OEC 403 and ultimately concluding that the probative value of the evidence was not substantially outweighed by any unfair prejudice that might arise from the jury learning that defendant had been on supervision status when he left Oregon for Michigan. *See Davis*, 372 Or at 634 (concluding that evidence is not unfairly prejudicial just because it is harmful to the defense and unfair prejudice means an undue tendency to suggest decisions based on an improper basis, commonly an emotional one). We therefore reject all of defendant's arguments in connection with his first assignment of error.

## MOTIONS AND OBJECTION MADE DURING TRIAL

We turn to defendant's second assignment of error, in which he contends that the trial court erred when it denied his motion for a mistrial. Defendant moved for a mistrial after his counsel reviewed defendant's supervising

---

[6] As noted, in light of the understanding that the jury would also learn that defendant was in custody from 2014 to 2016, the court had offered during the pretrial portion of the proceedings to "sanitize" defendant's supervision status by telling the jury that defendant's supervision status was related to that period of incarceration. Defendant refused that offer.

officer's notes and saw that, as early as February 2020, defendant had reported to the officer that he desired to move to Michigan to be with his fiancée. Defendant moved for a mistrial on May 5, 2022, the first day of trial. The notes had been provided by the state to the defense on May 3, two days before trial. The notes also indicated that the officer told defendant he could only go if he were married to the woman in Michigan. Defendant argued that the trial court should declare a mistrial because the notes had not been presented to the court at the pretrial hearing on the motion *in limine*. Defendant further argued that the new timeline established that defendant indicated a desire to move to Michigan before he was even approached by the detective regarding a potential investigation. The court denied the motion for a mistrial after concluding that, even if it had the notes, it would have reached the same ruling as before, particularly because the notes also indicated that defendant was told he could *not* leave Oregon unless he was married to someone in Michigan.

"We review the denial of a motion for a mistrial for abuse of discretion, and we will not reverse a conviction on that basis unless the defendant was denied a fair trial." *State v. Veatch*, 223 Or App 444, 455, 196 P3d 45 (2008). The trial court did not err in denying the motion. Defendant has not demonstrated on appeal that he could not get a fair trial. Again, there was evidence from which a reasonable factfinder could infer that defendant left the state to avoid a criminal investigation. There was also some evidence from which that factfinder could find that defendant left for other innocent reasons unrelated to any investigation. That was a factual issue for the jury to decide.

We turn briefly to defendant's third assignment of error. Defendant contends that the trial court erred when it denied his objection to the state's closing argument that purportedly referred to facts not in evidence. On appeal, defendant contends that the prosecutor presented facts not in evidence when it argued in closing that O had stopped making reports of abuse to DHS after she moved in with her mother. Having reviewed the record, however, we note that defendant did not object to that portion of the state's closing

argument. Indeed, the state had just restated its closing argument in response to a prior objection. Defendant gave no indication that he had any objection to the state's carefully restated argument.

Under those circumstances, we conclude that defendant's argument on appeal is unpreserved and it would not serve the practical purposes of preservation to conclude otherwise. *See State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004) (stating that the "purpose of the preservation rule is the practical one of requiring a defendant to provide an explanation of his or her position specific enough to ensure that the [trial] court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately." (Internal quotation marks omitted; brackets in original)). Defendant also does not ask for plain-error review of this unpreserved argument. We ordinarily do not engage in plain-error review in the absence of an explicit request and an explanation of how the standards for that discretionary review are met. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015). We decline to do so here.

## SENTENCING

Finally, in his fourth assignment of error, defendant argues that the trial court erred in imposing a mandatory 300-month prison sentence on Counts 2 and 3. Defendant contends that the sentence was unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution.[7] To determine whether a sentence is unconstitutionally disproportionate, we consider whether the punishment "is so disproportionate, when compared to the offense, so as to shock the moral sense of reasonable people." *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009) (internal quotation marks omitted). In making that assessment, we consider the following three factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *Id.*

---

[7] Article I, section 16, of the Oregon Constitution provides, in relevant part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

Defendant was convicted, among other things, of two counts of first-degree unlawful sexual penetration of a victim under 12 (ORS 163.411(1)(b)) for unlawfully sexually penetrating his daughter when she was under 12. Under ORS 137.700(2)(b)(F), defendant is subject to a mandatory minimum of 300 months' incarceration on each count, which, here, were ordered to be served concurrently. We agree with the trial court that a 300-month sentence for the conduct here is not so disproportionate that it would shock the moral sense of reasonable people.

Under the first *Rodriguez/Buck* factor, defendant argues that defendant's conduct in twice penetrating his young daughter's vagina falls under the "lower edge" of offenses covered by the statute. We have rejected a similar argument in the past and see no reason to deviate from our precedent. *See State v. Alwinger*, 236 Or App 240, 246, 236 P3d 755 (2010) (concluding that unlawful sexual penetration of a young child is a "very serious crime" and even a "brief and singular act that caused 'no physical injury apart from some redness and irritation' does little to minimize the severity of [the unlawful sexual penetration], especially given the fact that his conduct was aimed at a particularly vulnerable victim").

Under the second factor, defendant argues that the penalties imposed on defendant for first-degree unlawful sexual penetration are disproportionate compared to the penalties for the related crime of genital mutilation under ORS 163.207, which defendant contends could result in a maximum sentence of 45 months under the sentencing guidelines grid block (OAR 213-017-0004(6)). We cannot conclude that these are sufficiently related offenses such that a comparison of them would inform us as to whether the punishment here is disproportionate. The state argues that Oregon's bar on genital mutilation prohibits a practice that has been present in some cultures even though incompatible with the fundamental rights of girls and women and barred by Oregon law and other United States jurisdictions. We are not persuaded that genital mutilation or the punishment for that crime are helpful in determining proportionality here because it is not sufficiently related or comparable to the crime of unlawful sexual penetration of a minor. *See*

*Rodriguez/Buck*, 347 Or at 65 (stating that courts should compare "other crimes that have similar characteristics to the crime at issue"). In any event, the legislature has the

> "central role in determining which crimes are more or less serious * * * and, reflecting changing societal norms, the legislature may decide that certain crimes should henceforth be considered more serious and subject to more severe penalties than other crimes that previously had been considered more serious."

*Id.* at 64.

The final *Rodriguez/Buck* factor, the criminal history of the defendant, also weighs against disproportionality, considering that defendant had six prior adult felony convictions, including one person felony (second-degree assault).

Defendant also raises an identical argument regarding his sentence under the Eighth Amendment to the United States Constitution that is based entirely on his arguments above under the Oregon Constitution. We summarily reject that argument for the same reasons. *See State v. Wiese*, 238 Or App 426, 429-30, 241 P3d 1210 (2010), *rev den*, 349 Or 654 (2011) (summarily rejecting the defendant's federal proportionality challenge for the same reasons as his state constitutional claim).

For all the reasons stated above, we reject each of defendant's four assignments of error and affirm the judgment of the trial court.

Affirmed.