600 June 17, 2026 No. 549

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILFREDO AGUILAR-PINEDA,
*Defendant-Appellant.*

Washington County Circuit Court
22CR53222; A185039

Erik M. Buchér, Judge.

Submitted April 7, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Charge for extradition costs stricken from judgment; otherwise affirmed.

**EGAN, J.**

Defendant appeals a judgment of conviction, after a jury trial, of two counts of first-degree rape, ORS 163.375; one count of first-degree sodomy, ORS 163.405; two counts of second-degree rape, ORS 163.365; two counts of first-degree sexual abuse, ORS 163.427; and two counts of luring a minor, ORS 167.057. The conduct for which defendant was convicted arose out of defendant's alleged long-term sexual abuse of his stepdaughter, M, who was 15 years old at the time of trial.

In his first assignment of error, defendant contends that the trial court plainly erred in requiring defendant to pay $2,247.54 in extradition costs without first making a finding as to defendant's ability to pay the costs. The state concedes error, noting that despite assessing extradition costs, the trial court commented that it didn't think that defendant "was going to ever pay it."[1] We accept the state's concession. *See State v. Velasquez-Orozco*, 285 Or App 881, 882-83, 398 P3d 501, *rev den*, 361 Or 801 (2017) (holding that the court errs in imposing extradition costs without evidence that the defendant has the ability to pay). We exercise our discretion to correct the plain error and strike the assessment from the judgment. *See id.* at 883 (exercising discretion under similar circumstances because of the amount of costs ordered and the lengthy prison term to which the defendant was sentenced).

In his second and third assignments, defendant contends that the trial court plainly erred in admonishing, threatening, or coercing M, the complaining witness, to testify, resulting in substantial prejudice to defendant and a violation of his right to due process under the Fourteenth Amendment to the United States Constitution. The state responds that the pressure that the court placed on M to testify was not unlawful and did not deny defendant a fair trial. As discussed below, we agree with the state that the court's and prosecutor's conduct did not constitute plain error by depriving defendant of a fair trial.

---

[1] The court also waived all fines and fees, including court appointed attorney fees, and the record does not include evidence from which the court could find an ability to pay.

In his fourth assignment, defendant contends that the trial court erred in denying his motion *in limine* to bar witnesses from using the terms "disclose" or "disclosure" when referring to statements made by M. Defendant acknowledges that we have rejected that argument in *State v. Solano*, 332 Or App 646, 654-55, 551 P3d 938, *rev allowed*, 372 Or 763 (2024). We likewise reject it here without further discussion.

Defendant contends in his fifth and sixth assignments that the trial court erred in admitting evidence, as proof of consciousness of guilt, that, after having learned of M's complaint and his indictment, defendant gave a false name during a traffic stop, fled to North Carolina, and had to be extradited. The state responds that there was no error in admitting the evidence. As explained below, we agree with the state.

We first address defendant's second and third assignments, in which he contends that the trial court and the prosecutor committed plain error in coercing M to testify, resulting in a denial of due process. Defendant acknowledges that, in the plain error context, his burden is to show that the trial court's and the prosecutor's actions deprived him of a fair trial. *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022).

The state called M as its first witness at trial. M, who had previously testified before the grand jury and had given statements to police, CARES, and the prosecutor, initially declined to speak, other than to state that she felt "not good" about being there. For 20 to 30 minutes, during which the court called two recesses, the prosecutor and the court attempted to persuade M to testify. After the second recess, M agreed to answer questions by the prosecutor and defense, and she did testify.[2]

---

[2] M's testimony was brief. The prosecutor asked M a series of leading yes-and-no questions, which she answered affirmatively: He asked M if she was 15 years old and a sophomore in high school. He asked her if her birthday was April 20, 2009, and if the woman sitting behind her was her mother. The prosecutor asked M to confirm the names of her family members, which the prosecutor stated, and if she remembered her apartment on Trailwalk Drive. The prosecutor asked M if the person seated behind him (defendant) was the person she considered to be her dad. He asked her if she remembered being interviewed at CARES and if she talked to the interviewer "about real things that really happened."

In his second and third assignments, defendant asserts that the prosecutor and trial judge improperly intimidated and coerced M to testify, thereby undermining the reliability of her testimony and denying defendant a fair trial and resulting in a violation of his right to due process under the Fourteenth Amendment, so as to give rise to plain error. In particular, defendant cites repeated statements by the court and the prosecutor that M could not go home until she had answered the prosecutor's and defense counsel's questions. Defendant also cites the prosecutor's statement to M that if she would answer the questions, "nobody gets in trouble, and you guys get to go home." Defendant cites a statement of frustration by the judge over what do to about M's refusal to testify, telling M that if she was an adult, he would "probably throw [her] in jail," but that because she was an alleged victim and a child, he would not do that.

Defendant acknowledges the trial court's inherent authority to maintain order and efficiency at trial, *State v. Mott*, 370 Or 830, 843, 527 P3d 758 (2023) (citing *State v. Hightower*, 361 Or 412, 393 P3d 224 (2017)), but argues that the court exceeded that authority by intimidating M to testify and to testify *favorably* for the prosecution, thereby depriving defendant of a fair trial. Defendant points out that, if M had refused to testify, she would have been unavailable as a witness, which would have benefited defendant. *See* OEC 804(1)(b) (defining 'unavailability as a witness' to include situations where a witness 'persists in refusing to testify concerning the subject matter of a statement despite an order of the court to do so'). Further, although defendant acknowledges that the trial court did not explicitly direct M to testify favorably for the prosecution, he asserts that, in the context of pressure from both the prosecutor and the court, that was the likely effect. That likely effect, defendant

---

Defendant's counsel then asked M a few questions. He asked M if, when CARES interviewed her, she told the interviewer that, "the first time things happened" with defendant, she was age nine; M answered in the affirmative. He then showed M a page of transcript from the grand jury hearing and asked M if she remembered telling the prosecutor, during grand jury testimony, that "the first time something happened" was when she was five or six years old. She answered in the affirmative.

On redirect, the prosecutor asked M why she would have said she was five or six years old, and M answered that it was because she couldn't remember.

contends, was reinforced by the court's curt disallowance of defense counsel's attempt to interject during the prosecutor's and the court's efforts to force M to testify.[3]

The state responds that defendant's arguments do not meet the standard for plain error review, and we agree. Error is plain if it is (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record, meaning that we need not go outside the record or choose among competing inferences to find it. *State v. Worsham*, 373 Or 739, 743-44, 571 P3d 759 (2025). Although we agree that the trial court and the prosecutor placed heavy pressure on M to convince her to testify, it is not obvious or undisputed that their actions were improper. That is true notwithstanding the significance to defendant's case of M's decision whether to testify. The record shows that the court and the prosecutor were exceedingly patient with M as they tried to convince her to testify. When M continued to refuse, the court had inherent authority to order M to testify and to apply pressure by telling her that she could not go home until she complied with the court's request. *See* ORS 33.096 ("A court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court."); ORS 33.015(2)(c) ("Contempt of court" includes the willful "[r]efusal as a witness to * * * answer a question contrary to an order of the court."); *State v. Tripp*, 36 Or App 141, 583 P2d 591 (1978), *rev den*, 285 Or 73 (1979) (affirming contempt of 15-year-old juvenile and confinement to a facility resulting from her refusal to testify before the grand jury in an investigation of possible sexual abuse in which she was the crucial witness and alleged victim). Contrary to defendant's contention, the court's authority to impose a sanction pursuant to its summary contempt authority under ORS 33.096 did not violate federal due process. *State v. Spainhower*, 251 Or App 25, 29, 283 P3d 361 (2012) (the court's "inherent common-law authority codified

---

[3] It is conceded that the arguments raised by defendant on appeal relating to the court's and prosecutor's exchange with M were not raised below, and there is no argument that defendant did not have an opportunity to raise the arguments. Defendant filed a motion for a "remedy" for M's testimony, and the trial court did allow defendant the opportunity to question the detective who had been present during the court's and prosecutor's exchange with M outside the presence of the jury.

in ORS 33.096 does not offend federal due process require-
ments" (Citing *In re Oliver*, 333 US 257, 275, 68 S Ct 499, 92
L Ed 2d 682 (1948)).

Defendant further contends that the court's and the
prosecutor's pressure on M likely caused her to testify favor-
ably to the prosecution. But the record does not support that
contention. The court and the prosecutor told M that she
needed only to testify audibly, truthfully, and honestly and
to answer questions, either yes or no, "or 'I don't know' if you
don't know." After she was sworn in and before she agreed to
testify, the prosecutor told M that her oath was "a promise
to only talk about real things that really happened." When
she finally did testify, M answered affirmatively the prose-
cutor's question about whether the things she described to
CARES and the detective investigating the case were "real
things that really happened." We conclude that it is unlikely
that M felt pressured to testify favorably for the prosecution.
Indeed, M showed great fortitude in resisting the court's
and the prosecutor's pressure to testify.

We acknowledge that the prosecutor's cryptic threat
that M should testify to avoid "trouble" perhaps pushed the
limits of appropriate pressure. But we cannot conclude on
this record that it is "beyond dispute" that the actions of the
court or the prosecutor "were so prejudicial as to have denied
defendant a fair trial," *Chitwood*, 370 Or at 312 (internal
quotation marks omitted), or that the trial court would have
abused its discretion in denying a motion for mistrial had
one been made. *Id.* at 311. Thus, we conclude that there was
no plain error, and we reject defendant's second and third
assignments.

In his fifth and sixth assignments of error, defen-
dant presents together his contentions that the trial court
erred in admitting, as proof of consciousness of guilt, evi-
dence that, after the grand jury hearing in which he was
indicted, defendant gave a false name during a traffic stop
and fled to North Carolina, from which he had to be extra-
dited. We conclude that there was no error.

In the first place, the Supreme Court and we
have held that evidence of flight or an attempt to evade

apprehension by law enforcement (such as by giving a false name), is admissible as evidence of consciousness of guilt. *State v. Brown*, 231 Or 297, 300, 372 P2d 779 (1962) (after the commission of a crime, "flight, concealment, and use of a false name," if established, "are admissible as evidence of a guilty conscience, which is some evidence of guilt."); *State v. Kropf*, 339 Or App 245, 250-51, 568 P3d 224, *rev den*, 374 Or 379 (2025). Of course, we are bound by the Supreme Court's case law. There is sufficient evidence in the record from which the jury could reasonably infer that, before the traffic stop at which defendant gave a false name and before he fled Oregon, defendant had become aware of M's accusations and the charges against him. Thus, we conclude that the challenged evidence was relevant as evidence of consciousness of guilt. OEC 401 (Evidence is relevant if it has any tendency to make a fact of consequence more or less probable.).

We further conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence was not outweighed by any danger of unfair prejudice. OEC 403; *State v. Raney*, 331 Or App 693, 705, 547 P3d 172 (2023) ("A trial court's decision to admit evidence over an objection that its probative value is outweighed by its prejudicial effect is reviewed for an abuse of discretion.").

Charge for extradition costs stricken from judgment; otherwise affirmed.